[L. A. No. 19629. In Bank. Feb. 3, 1948.]

MERLE E. FISH, Respondent, v. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Association), as Executor, etc., Appellant.

Henry T. Moore for Appellant.

Oliver O. Clark and Robert A. Smith for Respondent.

CARTER, J.—Defendant, as executor of the estate of Gladys Isabel Ferres, deceased, appeals from a judgment which awards to plaintiff $29,012.45 found to have been held by the decedent as trustee for the joint use and benefit during her lifetime of herself and plaintiff and for the sole use and benefit of the survivor after the death of either.

The basic question is that of the sufficiency of the evidence to support the findings and judgment. The evidence shows that between plaintiff, a minister of the gospel, and the decedent, there grew up over a period of years a relationship of great confidence. The husband of decedent passed away in 1931. Decedent had no children or descendants and during the greater portion of the time from 1931 until her death in 1943 she lived alone. She was a woman of wealth, having a constant income in excess of her personal needs. As plaintiff alleged and the trial court found, decedent, after her husband's death, "required assistance in the care and management of her property and affairs and also the companionship of others in relief from loneliness"; "a feeling of high regard and friendship arose between the [decedent] on

the one hand and [plaintiff] and the members of his family on the other, and from about the year 1931 up to the date of her death this plaintiff constantly advised with and assisted [decedent] in the care and management of her property and affairs. In addition thereto, [decedent] spent a large portion of her time visiting in the home of plaintiff; innumerable automobile trips were taken by her in company with plaintiff and members of his family; and [decedent] was contacted almost daily by plaintiff or some member of his family in the performance of some service or other friendly act."

Decedent suffered from an impairment of hearing which caused her some difficulty, particularly at any long or involved conference, but she was unquestionably competent. As the trial court commented, "All of the evidence in the case that touches on that point shows that [decedent] was not only mentally competent but very or exceptionally mentally competent to determine what she wanted to do . . . There is no question raised on that score at all. . . ."

In February, 1934, the decedent executed a will by which she disposed of her estate of more than $550,000 in value. Defendant executor, as trustee under a charitable trust, was named residuary legatee, and it will receive over $200,000, regardless of whether it also receives the sum here involved. Decedent executed a first codicil to her will in March, 1934, a second codicil in 1935, a third in 1939, and a fourth in 1943. By the second codicil she devised and bequeathed to plaintiff her home and furnishings of an appraised value of $11,100, and an automobile valued at $500. This devise and bequest, standing without change from 1935 to 1943, is indicative of decedent's early intent to reward plaintiff for his service to her.

In July, 1937, decedent established, and during her life maintained, a bank account in joint tenancy with plaintiff, in which she deposited the sum of $35,000. This is indicative of decedent's continuing generosity toward plaintiff.

In May, 1941, decedent made a loan of $30,000 to Pierce Brothers, a mortuary corporation, of which plaintiff was standby minister (the minister called in when the parties have no particular preference). A $30,000 note evidencing the loan was executed by the mortuary to decedent and plaintiff as joint tenants with right of survivorship. On this note

the mortuary made 16 payments to decedent, in her name alone, aggregating $15,012.45. These payments were placed in a bank account standing in the name of decedent alone.

In May, 1942, decedent caused to be issued to herself and plaintiff, as joint tenants with full right of survivorship, a certificate evidencing ownership of 1,000 shares of the capital stock of the mortuary corporation of a par value of $25 a share.

In October, 1942, the following transaction took place: The mortuary, by check payable to decedent only, repurchased its stock for $25,000. The $25,000 was immediately loaned back to the mortuary so that it then owed the $25,000, a balance of $16,666.72 on the $30,000 note, and a balance of $35,844.76 on another $45,000 note which it had executed to decedent, or an aggregate debt of $77,511.48. These obligations were consolidated in a single note for $77,511.48, executed by the mortuary to decedent and plaintiff as joint tenants. Thereafter the mortuary made payments on the consolidated note to decedent alone totaling $14,000. The payments were deposited by decedent in the same bank account, in her name only, in which she had deposited the payments of $15,012.45 made on the $30,000 note. This bank account, from the time of the first deposit, contained a balance of more than the amount of the payments made by the mortuary, or more than the aggregate of all payments, to wit: $29,012.45, at the time of decedent's death.

After the passing of decedent in August, 1943, the funds on deposit came into the possession of defendant executor. It rejected plaintiff's claim in the sum of $29,012.45, and this action followed. Plaintiff's complaint was framed on the theory that the moneys were joint tenancy funds because they were received by decedent as payments upon joint tenancy notes and, having been kept intact by her until her death, they retained their character as joint tenancy property. In the first two counts of the complaint, one for $15,012.45 and the other for $14,000, plaintiff alleged that the respective sums were received by decedent without any agreement between her and plaintiff that their joint tenancy character would be altered, and that decedent retained possession of the funds for the sole purpose of holding them until a favorable opportunity should arise for reinvestment in some form satisfactory to both parties. In the third

count plaintiff alleged that the sums were paid to and received by decedent "as Trustee for the joint use of herself and this plaintiff during their lifetimes, and for the sole use and benefit of the survivor after the death of either." At the time of submission of the cause in the trial court plaintiff elected to stand on the third count, and the court thereupon made findings and gave judgment in his favor.

It was essential to the establishment of plaintiff's claim to the funds, under any theory, that he first establish his joint tenancy interest in the $30,000 and $77,511.48 notes and the validity of the joint tenancy transactions. On this subject the evidence gave rise to conflicting inferences which were resolved by the trial court in plaintiff's favor. The court found that at all times mentioned in the complaint plaintiff was and now is a minister of the gospel and that he so represented himself to decedent; that over a course of several years immediately prior to her death, plaintiff undertook to and did advise decedent upon worldly as well as spiritual matters, particularly with respect to the use, management, and disposition of her property and with respect to business transactions; that as a result of such association, a relation of personal confidence arose between plaintiff and decedent in fact and in law; that on the occasions of the loans made by decedent to the mortuary, and execution of the notes evidencing them, "plaintiff took an active part in said negotiations and was active in procuring the making of said loans by decedent to the maker of said notes and in procuring the preparation and signing of the notes . . ."

But the trial court further found that "it is not true that the conduct of said decedent in creating any joint tenancy relation between herself and plaintiff, or in any management or disposition of her property, or in any business transaction, or in any respect wherein plaintiff benefited thereby, was the result of, or was influenced by, any undue influence by, or fraudulent conduct of, said plaintiff, and it is hereby expressly found, as facts, that the conduct of said decedent in respect of each and all of the matters set forth in the pleadings herein, was her free and voluntary act; was knowingly and understandingly done, and was free of any undue influence, coercion or fraud, upon the part of said plaintiff, and represented an expression of free

and independent understanding and desire; that in all matters, and at all times, plaintiff acted in the highest good faith toward said decedent, and plaintiff did not at any time obtain any advantage over the decedent, or any interest in any of her property, by any misrepresentation, threat, concealment, or adverse pressure, of any kind, and plaintiff did not at any time use the influence which his position with said decedent gave to him, to obtain any advantage over or from said decedent.''

In challenging the sufficiency of the evidence to support these findings defendant relies upon the presumption of fraud, insufficient consideration, and undue influence which arises where a confidential relationship exists between the parties, and the one in whom confidence is reposed actively participates in a transaction whereby he obtains a gift from or advantage over the other; such a presumption is evidence and casts upon the party who has gained the advantage the burden of rebutting it and showing fairness and good faith. (*Herbert* v. *Lankershim,* 9 Cal.2d 409 [71 P.2d 220]; *Estate of Cover,* 188 Cal. 133 [204 P. 583]; *Estate of Nutt,* 181 Cal. 522 [185 P. 393]; *Odell* v. *Moss,* 130 Cal. 352 [62 P. 555]; *Estate of Miller,* 16 Cal.App.2d 141 [60 P.2d 492]; Code Civ. Proc., §§ 1957, 1961; Civ. Code, §§ 2219, 2235.) Defendant claims that plaintiff failed utterly to sustain the burden cast upon him to rebut the presumption, and complains of the fact that plaintiff did not even undertake to testify in support of his position.

Plaintiff's failure to testify fully is said by him to be due to the fact that he believed that such testimony was barred by section 1880, subdivision 3, of the Code of Civil Procedure, which prohibits a party to an action on a demand against the estate of a deceased person, from being a witness "as to any matter or fact occurring before the death of such person.'' Since the cause of action upon the third count was one to declare a resulting trust and not an action upon the demand against the estate, plaintiff's belief that his testimony was barred was erroneous. (*Porter* v. *Van Denburgh,* 15 Cal.2d 173, 176 [99 P.2d 265]; *Myers* v. *Reinstein,* 67 Cal. 89, 91-92 [7 P. 192]; *Alvarez* v. *Ritter,* 67 Cal.App.2d 574, 579, 580 [155 P.2d 83]; *Corley* v. *Hennessy,* 58 Cal.App.2d 883, 887 [137 P.2d 857]; *Humes* v. *Humes,* 56 Cal.App.2d 126, 132, 133 [133 P.2d 39].)

But giving full effect to the presumption arising from the confidential relationship, we think it is clear that the evidence adduced and the inferences which may reasonably be drawn from it sufficiently support the trial court's conclusion that plaintiff met the burden cast upon him. The evidence shows a competent donor who over a period of 12 years increasingly looked to the donee for companionship, advice and service, and a continuing practice over those years to frequently reward him. The $30,000 note was executed more than two years and the consolidated note more than 10 months before the death of the donor. No person was shown to have a stronger claim to her bounty than plaintiff. The gifts were made in a manner (creation of joint tenancies) affording the donor some protection during her lifetime. The donor successfully handled her valuable properties from 1931 to 1943 so that she left an estate of over half a million dollars. She was familiar with joint tenancies for in 1937 she opened the joint bank account with plaintiff. Officers of Pierce Brothers testified that during the period of the joint tenancy transactions, although most of the talking was done by plaintiff and the instructions were given by him, yet they saw and conversed with decedent on many occasions. The consolidated note was secured by trust deed. Decedent was present when the note and trust deed was negotiated and executed.

Because the voice of decedent was silenced by death and that of plaintiff by his assumption of applicability of the statute, there was no direct testimony that decedent understood the nature of the joint tenancies. But considering the orderly manner in which the transactions appear to have been conducted, and from the testimony given by representatives of Pierce Brothers, it may reasonably be inferred that decedent was fully aware of the nature and implications of her acts and of what was done. That the evidence may also be construed to give rise to conflicting inferences is immaterial.

In *Kelly* v. *McCarthy*, 6 Cal.2d 347, 364 [57 P.2d 118], undue influence is spoken of as ''influence amounting to moral coercion destroying grantor's free agency and constraining him to do what is against his will but what he is unable to refuse. . . . Undue influence comprehends overpersuasion, coercion or force that destroys or hampers free agency and will power of the testator, and mere affection

or attachment or a desire to gratify the wishes of one beloved, respected and trusted may not of itself amount to undue influence affecting testamentary capacity. . . . 'Influence gained by kindness and affection will not be regarded as "undue" if no imposition or fraud be practiced, even though it induce the testator to make . . . an unjust disposition of his property in favor of those who have contributed to his comfort and ministered to his wants, if such disposition is voluntarily made.' "

It must be remembered that the trial court found for plaintiff. The court was justified in concluding that the notes were delivered to decedent and that after recordation she received the trust deed in the mail from the recorder, and that she was fully aware of the implications arising from the manner in which the transactions were negotiated. She received periodic payments on the notes, 16 on the first and 11 on the second.

Defendant claims support in the fact that an erasure or alteration appears to have been made in the typewritten name of the payees on the consolidated note, and questions the validity of the note, suggesting that it may originally have been made out to decedent alone and later changed to state the names of decedent and plaintiff as joint tenants. The defect shows on the face of the photostatic copy of the note and although it might indicate the inference suggested by defendant, it more reasonably gives rise to the inference that it represents merely a slight erasure to correct an error of the typist. The issue was for the trial court. The transaction was openly conducted as were all the joint tenancy transactions. The trust deed was taken in joint tenancy and the trial court's inference that the note was also so taken seems the one most likely to be true.

Relying upon the presumption that where the consideration for a purchase is furnished by one person and title is taken in the name of another, a trust is presumed to result in favor of the one furnishing the consideration (*Goes* v. *Perry*, 18 Cal.2d 373, 379 [115 P.2d 441]), defendant argues that under the undisputed evidence that substantially all, if not all of the consideration for the notes was furnished by decedent, it must be presumed that a trust resulted in her favor, and no evidence was adduced by plaintiff to rebut the presumption. This contention is answered by what has already been said, and by the fact that the re-

peated evidence of decedent's past bounties to plaintiff negatives any intent of a trust or of other than a gift to him. The trial court was justified in resolving all conflicting evidence in favor of plaintiff on this issue.

The conclusion of the trial court, therefore, that the joint tenancy transactions were valid and that defendant was the owner of a joint tenancy interest in the notes may be accepted as a premise in determining the further question whether the evidence sufficiently supports the correlative conclusion that the funds totaling $29,012.45 were also joint tenancy property, although standing in decedent's name. ■ The proceeds of joint tenancy property, in the absence of contrary agreement, retain the character of the property from which they are acquired (*In re Kessler,* 217 Cal. 32, 35 [17 P.2d 117]; *Estate of Harris,* 169 Cal. 725 [147 P. 967]; *Bliss* v. *Martin,* 74 Cal.App.2d 500 [169 P.2d 61], and cases there cited; *Wallace* v. *Riley,* 23 Cal.App.2d 654, 665 [74 P.2d 800]; *Estate of McCoin,* 9 Cal.App.2d 480, 482 [50 P.2d 114]).

■ Defendant contends that here the evidence establishes that plaintiff either acquired no interest in the payments on the notes or, if he did acquire any interest, he relinquished it to decedent; that decedent received the payments in her own name, deposited them in her personal account despite the existence of a joint tenancy account with plaintiff; that this was all done with the acquiescence of plaintiff, who made no claim to the funds during decedent's lifetime; that decedent's attorney testified that plaintiff told him that the understanding was that plaintiff "was to get only what was left when she died"; and that testimony was offered, but excluded by the trial court, to show that decedent paid income taxes on the funds.

This evidence, however, does no more than create a further conflict which the trial court was justified in resolving in plaintiff's favor. From the evidence as a whole the court could reasonably conclude that there was no agreement between decedent and plaintiff that the fruits of the joint tenancy notes would not retain their joint tenancy character or that plaintiff would relinquish his interest in them. Decedent's receipt of the payments as a joint tenant was not in derogation of plaintiff's joint tenancy interest even though the payments were made in the name of only the one joint tenant (*Delano* v. *Jacoby,* 96 Cal. 275, 278 [31 P. 290, 31

Am.St.Rep. 201]; Civ. Code, § 1475). The funds could be retained or reinvested by either joint tenant without destroying their joint tenancy character. (*Wallace* v. *Riley, supra,* and cases above cited.)

The statement attributed to plaintiff by decedent's attorney, that plaintiff "was to get only what was left . . .," did not necessarily imply that he was to get only the balance remaining unpaid on the notes. It equally well implied that he was to get whatever portion of the joint tenancy property which was still in existence at the time of her death, that is, balance unpaid on the notes and the fruits thereof.

That decedent may have paid income tax on the funds might be material as tending to show that she regarded them as her sole property, but if such evidence had been admitted it would not have affected the conclusion reached by the trial court. It would have been merely cumulative, for decedent's exercise of complete dominion over the funds, as though they were her sole property, was shown without dispute by other evidence. The payment of the tax by her would not of course have effected any change of ownership or interest.

There was no direct evidence of the relinquishment by plaintiff of his joint tenancy interest in the proceeds of the notes and the evidence supports sufficiently the trial court's conclusion that the interest remained unchanged at the time of decedent's passing.

■ Defendant urges that plaintiff's third cause of action does not support the judgment because it pleads nothing but an express trust; that the evidence shows that the trust, if any, under which decedent held the funds could not have been an express trust, but only a resulting or constructive trust, neither of which is sufficiently pleaded because the facts giving rise to such a trust are not alleged. This contention grows out of the fact that when plaintiff elected to submit his case on the third cause of action, it left his pleading void of the probative facts, which were sufficiently alleged in the first and second causes of action only. The defect might then have been cured by a simple amendment incorporating the necessary allegations in the third count. Defendant did not raise the point or object to the sufficiency of the pleading. On appeal it is in no position to urge this alleged defect as reversible error.

■ The third count sufficiently pleaded the existence of a trust under which plaintiff claimed the right to recover

the joint tenancy funds (*Altramano* v. *Swan*, 20 Cal.2d 622, 627-628 [128 P.2d 353]; *Knapp* v. *Knapp*, 15 Cal.2d 237, 241 [100 P.2d 759]; *Johnson* v. *Clark*, 7 Cal.2d 529 [61 P.2d 767]; *American Bible Soc.* v. *Mortgage Guar. Co.*, 217 Cal. 9 [17 P.2d 105]). The modern tendency is to relax the strict requirements of trust pleadings, and here, regardless of the nature of the trust, it is indisputed that the court had before it all of the probative facts which had been set up in the first two counts and shown by the evidence. The only purpose of requiring the allegation of probative facts, is that the court and opposing parties may not be misled. As said in *Knapp* v. *Knapp, supra,* at page 241: "One who has a cause of action should frankly state the facts upon which he relies and not bring them out of a fog of doubt and uncertainty only when required by the lash of a special demurrer." Here the pleading fulfilled its purpose, for both court and opposing parties were fully informed at all times. In view, therefore, of the tardy relinquishment of the allegations of the first two counts, it will not be held reversible error for plaintiff to have failed to amplify the third count at the time of submission of his case to the trial court.

▆▆▆ Defendant complains of the trial court's exclusion of various items of evidence; for example, evidence relating to prior stock transactions to which plaintiff was not a party, had by decedent with the mortuary, and to the tracing through these transactions of the funds which constituted the $30,000 loan; evidence relating to decedent's alleged expressed desire to keep under her control during her lifetime the joint tenancy bank account with plaintiff; plaintiff's withdrawal of the funds in it on the day of her death and his comment that they could be redeposited in case of decedent's recovery; evidence of decedent's alleged failure to pay a gift tax on transfers to plaintiff; evidence of her relations with her attorney and comments of the attorney concerning plaintiff's request to be named executor in the will and plaintiff's failure to keep the attorney as fully apprised of events as the attorney felt he should be.

Some of this excluded evidence related to collateral matters and was immaterial; other items should have been admitted because of their bearing upon the issue of undue influence. Such proof, however, if admitted, would have been merely cumulative and would not have affected the trial court's conclusion; its exclusion was not reversible error.

Defendant dwells upon the equities of the cause. Obviously, however, it is no more inequitable for plaintiff, who was undisputably held in affection and high esteem by decedent, to receive the funds than it is for them to go into the residuary estate for payment under the charitable trust administered by defendant.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied March 1, 1948.