[Civ. No. 11034. Third Dist. Mar. 18, 1966.]

BILL FROELICH MOTOR COMPANY, Plaintiff and Respondent, v. THE ESTATE OF MARJORIE KOHLER, Deceased, et al., Defendants and Appellants.

Louis Francis and Cyril Viadro for Defendants and Appellants.

Spray, Gould & Bowers and Boyd A. Taylor for Plaintiff and Respondent.

WARNE, J. pro tem.* — Sometime prior to 1938 Fred Kohler and his wife Marjorie acquired a house, garage and boathouse situated on Lot 54, June Lake Camp, or June Lake Tract, of the Mono National Forest, adjacent to June Lake in the County of Mono, State of California, and a "Special Use Permit" executed by the Forest Supervisor of the Mono National Forest in favor of Marjorie Kohler. The "Special Use Permit" is in effect a lease of the land upon which the house and improvements are located.

Fred Kohler died in 1938 and thereafter Marjorie Kohler apparently had financial difficulties in maintaining the property. She executed a deed of trust covering the property to William C. Froelich on April 18, 1950, to secure a loan of $2,500. These funds were used to pay off a promissory note executed by Marjorie Kohler in favor of a Dr. Zahry and secured by a chattel mortgage on the above mentioned personal property.

William C. Froelich was a friend of the Kohlers and for sometime prior to 1956 until his death he used the house and the premises at June Lake to entertain friends and business associates. He had an agreement with Marjorie Kohler whereby he paid the upkeep on the house and the rent on the lot and employed Marjorie as a fishing guide. He also paid the taxes on the property from 1950 until 1959 and part of the cost of certain improvements.

On May 21, 1956, Marjorie Kohler for the sum of $2,500 executed a bill of sale whereby she conveyed to herself and William C. Froelich "with the sole right of survivorship" all

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

of the hereinabove described property and said "Special Use Permit." The personal property being specifically described in the bill of sale as "That certain two story dwelling house, garage and boathouse" and "included herewith is all furniture" in the house.

On the same day, i.e., May 21, 1956, Marjorie Kohler and William C. Froelich signed a statement relinquishing their respective rights in the "Special Use Permit" upon death. Froelich's statement read: "This is to certify that I agree to relinquish all my rights vested in the Special Use Permit executed by the Forest Supervisor of Mono National Forest. Said relinquishment to take effect in the event of my death, pursuant to the bill of sale dated May 21, 1956, and to the satisfaction of chattel mortgage under same date, filed in Mono County, in favor of Marjorie Kohler."

Marjorie Kohler executed a like relinquishment in favor of Froelich to take effect in the event of her death prior to his.

In addition, Froelich signed a document granting Marjorie Kohler an option to purchase his interest in the property for the sum of $5,000 in the event of her remarriage, and there is evidence in the record that Marjorie Kohler had an agreement with Froelich to buy him out "anytime" for $5,000. Marie Francis, Marjorie's sister, testified that Marjorie had an agreement with Froelich to pay her $2,500 in the event that Marjorie died before Froelich. There was also evidence to the effect that Froelich and Marjorie had agreed that neither party could sell his or her interest in the property unless the other agreed. The trial court, however, found that there was no valid agreement not to sell.

On April 30, 1959, William C. Froelich executed and delivered a quitclaim deed to the Bill Froelich Motor Company covering all of the interest which he had acquired by the bill of sale.

William C. Froelich died on May 10, 1960, and Marjorie Kohler died on November 21, 1961.

Following Marjorie Kohler's death plaintiffs sued for partition, quiet title, accounting, resulting trust and declaratory relief and prayed that plaintiff Bill Froelich Motor Company, a corporation, and the defendant be declared tenants in common and the property be sold.

The trial court found that plaintiff Bill Froelich Motor Company, a corporation, and the Estate of Marjorie Kohler, deceased, are the owners as tenants in common of an undivided

one-half interest each in the property described in the bill of sale; that partition could not be had without great prejudice and injury; that a sale was necessary and that said property should be sold. The trial court further found "that there was no valid agreement between the plaintiff, Bill Froelich Motor Company, ... or Bill Froelich, now deceased, and Marjorie Kohler, now deceased, or anyone, not to convey out of the joint ownership"; and that "the property ... had formerly been held by Marjorie Kohler and Bill Froelich as joint tenants through an instrument in writing establishing such tenancy, and that Bill Froelich, by valid written deed transferred said property to the Bill Froelich Motor Company for a valuable consideration as aforesaid."

Defendants appeal from the judgment declaring plaintiff a tenant in common and ordering the property sold and the proceeds divided.

It is to be noted that the bill of sale whereby Marjorie Kohler transferred to herself and William C. Froelich the property in question does not expressly declare the transfer to be a joint tenancy as required by section 683 of the Civil Code.

Defendants contend that the bill of sale created a tenancy in common for the term of the life of each grantee with the remainder in fee to the survivor. Under this theory Froelich could convey only an estate for the term of his own life plus a contingent remainder, and upon his failure to survive Marjorie Kohler she would succeed to the entire estate.

In *Estate of Dean,* 68 Cal.App.2d 86, the court said at page 90 [155 P.2d 901]: "... A joint tenancy interest must be created in accordance with the provisions of section 683 of the Civil Code, except that a joint tenancy in a bank deposit may be created also under the provisions of the Bank Act. (Stats. 1909, p. 87 as amended: Deering's Gen. Laws, Act 652.) A bank deposit is not involved herein. Said section 683 provides: 'A joint interest is one owned by two or more persons in equal shares, by a title created by a single ... transfer, *when expressly declared in the ... transfer to be a joint tenancy,* or by transfer from a sole owner to himself and others ... *when expressly declared in the transfer to be a joint tenancy. ...*' (Italics added.) Section 686 of the Civil Code provides: 'Every interest created in favor of several persons in their own right is an interest in common,

unless acquired by them in partnership . . . or *unless declared in its creation to be a joint interest, as provided in section six hundred and eight-three,* or unless acquired as community property.' (Italics added.) In *Dalton v. Keers* (1931), 213 Cal. 204 [2 P.2d 355], wherein the question was whether real property was held in joint tenancy, the court said at page 207: 'It is clear that the contract now under consideration did not create a joint tenancy. . . . This is true, not because of the use of the disjunctive, but by reason of the fact that *the instrument itself did not so declare.'* (Italics added.) It was said further at page 208: 'In any·event the interest, if any, which the purchasers acquired under the contract of purchase was not a joint tenancy, under the express language of sections 683 and 686 of the Civil Code. . . .' "

And in *Cordasco v. Scalero,* 203 Cal.App.2d 95, the court said at page 103 [21 Cal.Rptr. 339]: "Under the holding in *Berl v. Rosenberg,* 169 Cal.App.2d 125 [336 P.2d 975], an intent to create a joint tenancy must be specifically set forth in the instrument creating it."

▇ Applying the law concerning joint tenancy as quoted in the above cited cases to the instant case, we have no hesitancy in holding that the bill of sale executed by Marjorie Kohler did not create a joint tenancy under the express language of sections 683 and 686 of the Civil Code.

▇ As we construe the bill of sale it conveyed a life estate to William C. Froelich in common with Marjorie Kohler, coupled with a remainder in fee contingent on him surviving her. Had he survived Marjorie Kohler, he or his transferee would have been entitled to the entire fee. Hence, Froelich having predeceased Marjorie, she became the owner in fee.

The question as to whether William C. Froelich was the *alter ego* of the Bill Froelich Motor Company requires no discussion.

The judgment is reversed and the trial court is ordered to enter judgment for the Estate of Marjorie Kohler, deceased.

Friedman, Acting P. J., and Regan, J., concurred.