[Civ. No. 24158. First Dist., Div. Three. Feb. 7, 1968.]

HELEN O. TAYLOR, Plaintiff and Appellant, v. CROCKER-CITIZENS NATIONAL BANK et al., Defendants and Respondents.

Kurt W. Melchior, Bernardus J. Smith, Severson, Werson, Berke & Bull and Severson, Werson, Berke & Larson for Plaintiff and Appellant.

Crimmins, Kent, Bradley & Burns, Angell, Adams & Holmes and Samuel L. Holmes for Defendants and Respondents.

BRAY, J.*—Plaintiff appeals from judgment quieting title to a promissory note as being held by her and her deceased husband in tenancy in common rather than in joint tenancy.

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

## QUESTION PRESENTED

 Where a promissory note is issued to husband and wife for money loaned, which money was obtained from the security of joint tenancy real property, is that note held in joint tenancy or in tenancy in common?

Under the circumstances hereof the answer is joint tenancy.

## RECORD

Plaintiff and George A. Taylor were married in 1957 and remained married until George's death June 12, 1965. Five days after the marriage George, in his own name, purchased certain real property. In 1958 he conveyed the property to himself and his wife in joint tenancy. The property remained in joint tenancy until his death.

George was vice president of Lewis & Taylor, Inc. In 1962, apparently, the company was experiencing a shortage of working capital and needed cash to meet the payrolls. George discussed with plaintiff the possibility of their making a loan to the company. At first she objected to doing so. However, she finally assented, and she and George went to the bank to borrow additional funds on the security of the joint tenancy property. Accordingly, on December 21, 1962, the property was refinanced and a larger loan on the house was obtained with the result that $6,666.81 in cash became available. This amount, on instruction of both spouses, was deposited in their joint checking account. Against this amount a check was drawn payable to Lewis & Taylor, Inc. in the amount of $6,266.81. The company then executed a promissory note in that amount payable to "George A. Taylor and Helen O. Taylor."

At the trial Edward E. Lewis, president of the corporation, testified that George stated at the time of the execution of the promissory note that "he would like to have us make the note payable to his wife and himself so that in case something happened to him this could be paid off to her." In response to a question "In other words, the entire proceeds of the note would be payable to her if anything happened to him; is that correct?" Lewis answered, "Yes."

At the time of George's death in 1965, the note remained unpaid. After his death plaintiff continued to make payments to the bank on the loan which had enabled the spouses to make the loan to the company. Plaintiff brought this quiet title action to have it determined that the note belongs to her as surviving tenant of a joint tenancy. Defendant Gene Elizabeth Taylor, the daughter of George by a prior marriage, contended

that the note was held in tenancy in common and that she, as residuary legatee under her father's will, succeeds to the father's one-half interest therein. The court found that, although the funds loaned to the company were obtained by a loan on the spouses' joint tenancy property, the promissory note was held by the spouses in tenancy in common; that plaintiff had an undivided one-half interest therein and that Crocker-Citizens National Bank, as executor of the will of George A. Taylor, deceased, held the other one-half interest therein.

There is no question but that the moneys loaned to Lewis & Taylor, Inc., were obtained by the spouses from a loan secured by their joint tenancy property. ▮▮ It is clear that under the authorities ''proceeds of joint tenancy property, in the absence of contrary agreement, retain the character of the property from which they were acquired.'' *Estate of Zaring* (1949) 93 Cal.App.2d 577, 580 [209 P.2d 642] (the proceeds came from the condemnation of joint tenancy property); see *Fish* v. *Security-First Nat. Bank* (1948) 31 Cal.2d 378, 387 [189 P.2d 10] (moneys paid to one of the joint tenants on joint tenancy notes); *Estate of Harris* (1915) 169 Cal. 725 [147 P. 967] (personal property purchased from joint tenancy monies).)

▮▮ Apparently the trial court based its determination on the fact that the promissory note in dispute ''contains absolutely no language which indicates that the note is to be held in joint tenancy, and there is no other writing executed by George A. Taylor which indicates that the note is to be held in joint tenancy.'' However, under the circumstance of the case at bench, it is not required that there be such writing.

In *Fish, supra* (p. 388), the court stated concerning the payments received from a joint tenancy promissory note: ''The funds could be retained *or reinvested* by either joint tenant without destroying their joint tenancy character. (*Wallace* v. *Riley, supra* [23 Cal.App.2d 654 (74 P.2d 800)] and cases above cited.)'' (Italics added.) In the case at bench, the loan of moneys received from the joint tenancy note was merely a reinvestment of the joint tenancy proceeds, the promissory note being only evidence of the underlying debt. It is the underlying debt which represents the investment of the joint tenants.

There is no evidence in the instant case of an agreement between plaintiff and George Taylor that the joint tenancy in the proceeds of the bank loan was to be severed or that the promissory note was to be held other than in joint tenancy.

Plaintiff testified concerning her reluctance to refinance the loan on the joint tenancy property to make the loan which is evidenced by the promissory note. Moreover, as hereinbefore stated, her husband desired that her interest as a joint tenant be fully protected.

Defendant contends that *Zaring* and *Fish, supra,* and similar cases such as *Beck* v. *Beck* (1966) 242 Cal.App.2d 396 [51 Cal.Rptr. 491]; *Hogevoll* v. *Hogevoll* (1943) 59 Cal. App.2d 188 [138 P.2d 693]; *Goldberg* v. *Goldberg* (1963) 217 Cal.App.2d 623 [32 Cal.Rptr. 93]; *Hicks* v. *Hicks* (1962) 211 Cal.App.2d 144 [27 Cal.Rptr. 307] and *Cordasco* v. *Scalero* (1962) 203 Cal.App.2d 95 [21 Cal.Rptr. 339], suggesting that a joint tenancy interest may be traced into sbsequent property, are not applicable because they do not appear to have considered the possible application of section 683 of the Civil Code which defendant contends states that personal property cannot be held in joint tenancy unless there is a writing to that effect, nor the possible application of section 164 of the Civil Code which provides in pertinent part that where personal property is acquired by a "married woman and any other person the presumption is that she takes the part acquired by her, as tenant in common, unless a different intention is expressed in the instrument; . . ." Defendant cites *California Trust Co.* v. *Bennett* (1949) 33 Cal.2d 694 [204 P. 2d 324] and *Cooke* v. *Tsipouroglou* (1963) 59 Cal.2d 660 [31 Cal.Rptr. 60, 381 P.2d 940] in support of her contention that there can be no joint tenancy in personal property unless there is a writing to that effect. *Bennett, supra,* held that a safe deposit box rental agreement to the effect that the box is to be held in joint tenancy by the signers is not a sufficient compliance with section 683 of the Civil Code which provides in pertinent part: "A joint tenancy in personal property may be created by a written transfer, instrument or agreement." *Cooke, supra,* held that a certificate of ownership of an automobile listing the owners as "Cooke Jack or Margaret" (p. 662) issued on application and signed by both was not a compilance with section 683 of the Civil Code. The court applied the presumption of section 164.

A discussion in 13 Cal.Jur.2d, Cotenancy, section 6, footnote 19, pages 293-294, makes it clear that regardless of the rule of *California Trust Co.* v. *Bennett, supra,* a writing was not necessarily required in the instant case to protect the existing joint tenancy interest. *Estate of Harris* (1915) 169 Cal. 725 [147 P. 967], is the case which is generally regarded as announcing the rule that personal property purchased with

joint tenancy funds retains joint tenancy character and *Estate of Harris* (1937) 9 Cal.2d 649 [72 P.2d 873], affirmed the rule of the first *Harris* case. After noting the two *Harris* cases, the discussion in 13 Cal.Jur.2d, *supra,* continues as follows: "In view of the holding in *California Trust Co.* v. *Bennett* 33 C2d 694, 204 P2d 324, that since the 1935 amendment of CC § 683 a writing is necessary to create a joint tenancy in personal property, it would seem that the rule as to personal property would be the same as in the case of real property. In fact in the *California Trust Co.* case the court, in discussing the necessity for a writing in the creation of a joint tenancy in personal property, said that neither the *Wheeland* case [20 Cal.2d 218 (124 P.2d 816)] nor the *Harris* case could be considered in determining the proper interpretation of the 1935 amendment of CC § 683 because both cases involved transactions which occurred prior to the date of the amendment. Yet in *Fish* v. *Security-First Nat. Bank* 31 C2d 378, 189 P2d 10, and *Zaring Estate* 93 CA2d 577, 209 P2d 642, both involving transactions taking place subsequent to the 1935 amendment, the rule is again stated that personal property acquired with joint tenancy funds retains a joint tenancy character." (P. 294.)

Consequently, the tracing principle established in *Estate of Harris, supra,* 169 Cal. 725, is not affected by Civil Code section 683. The rationalization for this principle is that in a tracing situation a court is not faced with problems of the original formation of a joint tenancy. Section 683 of the Civil Code deals with the creation of a joint tenancy. In the instant case we are not dealing with the creation of a joint tenancy but with its continuation. The moneys loaned to the corporation were joint tenancy moneys, and the debt due the spouses from the corporation because of the loan was also a joint tenancy debt. The promissory note is merely evidence of the debt and not the debt itself. (See *Goldwater* v. *Oltman* (1930) 210 Cal. 408, 423 [292 P. 624, 71 A.L.R. 871], holding that where a promissory note is given suit may be brought either on the debt or on the note evidencing the debt.) Thus section 164 of the Civil Code, dealing with the presumption that property acquired by a married woman and another person by a writing is presumed to be taken as tenancy in common, cannot apply.

As pointed out in *Cardew* v. *Cardew* (1961) 192 Cal. App.2d 502, 515 [13 Cal.Rptr. 620], the presumption set forth in section 164 may be overcome in many ways, one of which is a sufficient showing of the source of the funds involved. In

our case there is no dispute as to the source of the funds, they came from joint tenancy property. However, it is not a question of overcoming the presumption. It simply does not apply in the tracing of funds unless, perhaps, there is a conflict in the evidence as to the source of the funds traced. While it is true either party to a joint tenancy may terminate it, he can only do so if he intends to do so. Had the parties here intended to terminate the joint tenancy they could have done so. The evidence, however, shows that they did not so intend; rather, they intended that the joint tenancy continue. As said in *Cordasco* v. *Scalero, supra,* 203 Cal.App.2d 95, 105 [21 Cal.Rptr. 339] "any property acquired from the funds held in joint tenancy, will remain joint tenancy in character, unless there has been a change in the character of the property *by some agreement of the parties.*" (Italics added.) In our case there was no such agreement.

In *Opp* v. *Frye* (1945) 70 Cal.App.2d 478, 486 [161 P.2d 235] it is stated that in determining whether personal property obtained with joint tenancy funds retains the joint tenancy character "it is well settled . . . that the intention of the parties with respect thereto may be shown by circumstantial, as well as by direct, evidence and by inferences reasonably to be drawn therefrom." Thus, assuming that the acceptance of a promissory note evidencing a debt based upon a loan of joint tenancy funds is the creation of a status, that status may be determined by the circumstances surrounding the acceptance of the note.

Unless the tracing principle is applied, an unfair result will occur in this case. Mrs. Taylor, joint tenant in the real property with her husband, was reluctant to encumber that property to make a loan to her husband's company. Being induced to do so, if the promissory note which evidences the debt of the company for the loan made with moneys which were unquestionably joint tenant moneys is held to entitle her to only one-half of that debt, she is in the peculiar position that she must pay off the balance of the bank loan while a third person gets one-half of the amount of the promissory note and is not required to pay any portion of the bank loan.

The promissory note evidencing the loan of proceeds from joint tenancy property was the joint tenancy property of George and plaintiff.

The judgment is reversed.

Draper, P. J., and Salsman, J., concurred.