Filed 12/18/15  Carlsbad-Palomar Airline v. County of San Dieog CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CARLSBAD-PALOMAR AIRLINE, INC.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF SAN DIEGO,<br><br>Defendant and Respondent. | D067283<br><br><br><br>(Super. Ct. No.<br>37-2013-00063209-CU-BC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Judith F. Hayes, Judge.  Affirmed.

Thornton Koller and Audrey Powers Thornton for Plaintiff and Appellant.

Thomas E. Montgomery, County Counsel, and Thomas D. Bunton, Deputy County Counsel, for Defendant and Respondent.

Plaintiff Carlsbad-Palomar Airlines, Inc. (Airline) obtained an "Airport Use Permit" (AUP), signed on behalf of defendant County of San Diego (County) by Mr. Drinkwater in his capacity as Director of Airports for County's Department of Public Works, granting Airline certain rights and privileges at County's airport facilities at McClellan-Palomar Airport (Airport) for the calendar year 2012.  In 2013, Airline filed a

lawsuit against County alleging claims sounding in fraud and breach of contract. Airline dismissed all of the fraud-based claims when it filed its Second Amended Complaint (the SAC). Airline's SAC contract claims alleged, in essence, that County was obligated under the AUP to provide runways and taxiways at Airport, and to resolve unspecified environmental requirements, that would allow for the type of aircraft Airline wished to use in its proposed commercial airline service from Airport. The SAC further alleged County's failure to meet those obligations damaged Airline by preventing it from obtaining the federal certifications required to operate Airline's proposed commercial airline service.

County moved for summary judgment, alleging (1) Airline could not recover for breach of the 2012 AUP because it had not been approved by County's Board of Supervisors and was therefore void, and (2) County had not breached any express or implied obligation imposed on it by the AUP. The trial court agreed and entered summary judgment in favor of County, and Airline timely appealed.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. The Relevant Actors

Airline is a California corporation doing business as California Pacific Airlines. Ted Vallas was the Chief Executive Officer of (and majority shareholder in) Airline and was involved in the discussions and negotiations with County over the rights and privileges obtained by Airline.

2

County owns and operates Airport, which is located within the City of Carlsbad in northern San Diego County. Mr. Drinkwater was County Director of Airports within the transportation division for County's Department of Public Works.

B. The AUP's and Certification Process

Airline wanted to start a commercial airline operating out of Airport. Airline obtained its first AUP for the calendar year 2010 and obtained subsequent AUP's for 2011 and 2012. During these years, Airline was pursuing Federal Aviation Administration (FAA) certification to operate its proposed airline. Airline commenced the process of certification, which takes between two and four years and includes preparation of an environmental assessment. Airline obtained some of the required approvals from the United States Department of Transportation and the FAA, and by 2012 had obtained funds necessary to complete "part 21 certification" (by merger, lease or acquisition) and had aircraft available to start its operations, but ultimately did not receive final FAA certification.

Airline hoped to obtain certification to operate a certain aircraft (an Embraer E-170) out of Airport to run an economically viable airline. Even before Airline obtained its first AUP in 2010, County advised it (at least as early as 2009) that Airport did not meet FAA standards for that aircraft. Although Airline and County hoped to obtain FAA modifications or deviations from those standards to allow Airline to operate the Embraer E-170 at Airport, Airline knew the FAA could reject the necessary modifications or deviations. Approximately six months before the 2012 AUP was obtained by Airline, County officials told Airline that although airports can apply to the FAA for a waiver of

3

the wingspan limitation, the "mismatch of a Category 'C' airplane to a Category 'B' airport might be a bigger issue, since [Airport] has no room to accommodate safety zones required for [Category 'C' airplanes], and FAA regulations seem to indicate that they are not willing to waive the safety zone requirements." Also during this period, the FAA told Airline it was concerned whether Airport could safely accommodate Airline's proposed aircraft and asked Airline to provide data demonstrating the Embraer E-170 could operate safely out of Airport.

When Airline obtained the 2012 AUP, the AUP provided (among other things) that Airline "shall not operate aircraft which have not been approved by the Airport[']s Director or which exceed total passenger loading limits for which the airport is certified." The AUP also stated Airline "accepts the Premises in their current condition," and Airline "acknowledges that County has made no oral or written representations or warranties . . . regarding the condition of the Premises . . . ." The 2012 AUP required Airline to pay monthly fees totaling $4,652 for exclusive use of various Airport facilities (i.e. two check-in counters, three offices and six reserved employee parking spaces at Airport), and also provided for additional monthly payments (calculated based on the number of landings by Airline's airplanes and any overnight parking requirements for airplanes) set by a schedule that was "set independently of the Schedule of Rates and Charges and Use Control Policy of the County of San Diego Airports . . . ."

In August 2012 the City of Carlsbad, commenting on Airline's draft environmental assessment, indicated it had several concerns with that assessment. Among other concerns, the City of Carlsbad's comments stated Airport operated under a Conditional

4

Use Permit (CUP) issued by the City of Carlsbad that limited Airport to use as a facility for "General Aviation Basic Transport Service," and Airline's proposed use of Airport for an aircraft (the Embraer E-170) carrying 70 or more passengers "exceeds the 'basic transport' CUP limitation" and would require an amendment of the CUP issued by the City of Carlsbad.

C. The Litigation and SAC

Airline thereafter submitted to County a "Notification of Claim," asserting County had concealed from (or misrepresented to) Airline that the CUP limited commercial service at Airport to commercial aircraft seating no more than 30 passengers per flight knowing Airline intended to operate 70-passenger aircraft from Airport, and demanded damages from County for failing to perform its obligations under the contract with Airline. On February 20, 2013, County notified Airline it had rejected its claim.[1]

Airline filed this action in August 2013 alleging claims for fraud, inverse condemnation, and for breach of the 2012 AUP, which turned on Airline's claim that (1) County entered into the AUP's without disclosing that the CUP limitations and applicable land use elements did not allow for use of Airline's proposed aircraft at Airport and (2) County had not "compl[ied] with its environmental obligations" to allow Airline to

_____

[1] Shortly after County rejected Airline's claim, the City of Carlsbad wrote to Airline to inform it that, "[a]fter consultation with [County] officials responsible for airport operations," the City of Carlsbad was withdrawing its request that the CUP be amended because the CUP "does not specifically restrict the General Aviation Basic Transport Airport airline service with respect to the weight, seat number, or other similar limitations on air carrier activities . . . . [I]t appears that the proposed California Pacific Airline is within the CUP . . . permitted activity. Therefore, a CUP amendment will not be required . . . ."

5

establish its operations using the Embraer E-170 at Airport.[2]  County demurred to this version of Airline's complaint on the grounds the fraud claims were barred by immunity and the contract claims did not identify what contractual obligation was allegedly breached by County.  Airline, recognizing County's demurrers to the fraud and inverse condemnation claims "may have merit," sought to obviate the demurrer by seeking leave to file its SAC, which would (1) dismiss those claims and (2) clarify the nature of Airline's breach of contract claims.  As to its "clarified" breach of contract claims, Airline explained it would amend its complaint to clarify that its contract claims rested in the provision in the AUP that allowed Airline to use Airport's "runways, taxiways, ramp[s] and passenger loading areas" (in exchange for a fee calculated based on the amount of flights by Airline's aircraft) and alleging County breached that provision by not providing runways, taxiways, ramps and passenger loading areas suitable for Airline's desired aircraft.  The court permitted Airline to file the SAC.

D. The Summary Judgment Motion

County moved for summary judgment, arguing the undisputed facts showed the AUP was void because it was a lease or contract not authorized by a resolution of

_____

2      Although Airline's Notification of Claim was somewhat opaque and appeared to rest on the alleged concealments, Airline's SAC subsequently claimed County also breached its obligations under paragraph 3 of the AUP because County did not insure Airport had completed the tasks required to receive approval from the FAA for flights by the type of aircraft Airline wished to operate, and this failure prevented Airline from receiving FAA certification.  However, in a January 2013 letter to Airline, the FAA representative advised Airline that "matters related to the performance issues . . . have been resolved" and stated that "[Airline] has shown that the proposed aircraft . . . , *the Embraer EMB-170, is compatible with* [*Airport*]."  Accordingly, Airline was advised that "FAA is now prepared to proceed with the certification process for [Airline] to achieve Part 121 certification."

County's Board of Supervisors (or subjected to competitive bidding), as required by the applicable statutes. County also asserted that, even if the AUP was not void, the undisputed facts showed County did not breach any obligations imposed on it under the AUP because (1) nothing in the AUP mandated that County *provide* runways and taxiways at Airport suitable for the Embraer E-170, and (2) the FAA in fact determined Airport *was* suitable for the Embraer E-170.

Airline's opposition to the motion for summary judgment did not contest that the AUP was a lease or contract not authorized by County's Board of Supervisors as required by the applicable statutes, but instead asserted County should be judicially or equitably estopped from contesting the validity of the AUP. From that predicate, Airline then argued there were triable issues of fact on whether the AUP contained either an express or implied term that County warranted its runways and taxiways at Airport were suitable for the Embraer E-170, County breached that express or implied term because the City of Carlsbad declared that use of Airport for the Embraer E-170 violated the CUP, and as a result of this breach Airline was unable to continue to obtain funding and its efforts to obtain certification therefore collapsed.

The trial court found the AUP was void, and rejected Airline's claims that County was judicially or equitably estopped from asserting the AUP was void. The court also found that, even if the AUP was not void, Airline had not produced evidence raising a triable issue of fact that the AUP contained an express or implied term warranting the runways and taxiways at Airport were suitable for the Embraer E-170, or any express or implied promise it had environmental compliance to accommodate the Embraer E-170.

7

The court granted County's motion for summary judgment on all claims.  Airline timely appealed.

## II

## DISCUSSION

A. <u>Standard of Review</u>

We review de novo a grant of summary judgment, and we independently review the record before the trial court.  (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925.)  The purpose of the summary judgment procedure is to penetrate pleadings to discern, by means of affidavits, whether triable issues of material fact exist.  (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107.)  A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  (Code Civ. Proc., § 437c, subd. (c).)  In determining whether the affidavits submitted are sufficient to sustain a judgment in favor of the moving party, the moving party's affidavits are strictly construed and those of the opposition are liberally construed.  (*Stationers Corp. v. Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417.)  "[D]oubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion."  (*Ibid.*)

When a defendant moves for summary judgment, the supporting affidavits or declarations must demonstrate either that an element of the plaintiff's cause of action cannot be established or that there is a complete defense to that cause of action.  (Code Civ. Proc., § 437c, subd. (o); *Dolquist v. City of Bellflower* (1987) 196 Cal.App.3d 261, 266.)  "[A] party opposing a motion for summary judgment which is supported by

8

affidavits or declarations sufficient to sustain the [motion] has the burden of showing that triable issues of fact exist."  (*Chern v. Bank of America* (1976) 15 Cal.3d 866, 873.)

B. The Trial Court Correctly Held the AUP Was Void

It is undisputed the 2012 AUP was not entered into by County in compliance with Government Code[3] sections 25526 and 25530, which are part of the regulatory scheme governing the ability of a county to sell or lease county property.[4]  Because the 2012 AUP was not entered into after completion of the resolution, notice and competitive bidding process prescribed by statute, but was instead signed by Mr. Drinkwater in his capacity of Director of Airports within a division of County Department of Public Works,[5] we agree with the trial court the contract was void.

---

3      All further statutory references are to the Government Code.

4      Section 25526 provides that, "[b]efore ordering the sale or lease of any property the board of supervisors shall . . . adopt a resolution, declaring its intention to sell the property, or a resolution declaring its intention to lease it . . . .  The resolution shall describe the property proposed to be sold, or leased, . . . and shall specify the minimum price, or rental, and the terms upon which it will be sold, or leased, and shall fix a time . . . at which sealed proposals to purchase or lease will be received and considered."  Section 25530 provides that, "[a]t the time and place fixed in the resolution for the meeting of the board of supervisors, all sealed proposals which have been received shall, in public session, be opened, examined, and declared by the board.  Of the proposals submitted which conform to all terms and conditions specified in the resolution of intention to sell or to lease and which are made by responsible bidders, the proposal which is the highest shall be finally accepted . . . ."

5      The regulatory scheme permits a board of supervisors to "prescribe by ordinance a procedure alternative to that required by Sections 25526 to 25535, inclusive, for the leasing or licensing of any real property belonging to, leased by, or licensed by, the county. . . ."  (§ 25537, subd. (a).)  However, Airline does not contend the 2012 AUP may be upheld as a contract for a "leas[e] or licens[e]" validly entered into by Mr.

9

As explained in *Miller v. McKinnon* (1942) 20 Cal.2d 83, 87-88, "compliance with the terms of a statute requiring the letting of certain contracts by a public agency such as a municipal corporation or county by competitive bidding and the advertising for bids is mandatory with respect to those contracts coming within the terms of the statute; a contract made without compliance with the statute is void and unenforceable as being in excess of the agency's power." (Accord, *Schram Construction, Inc. v. Regents of University of California* (2010) 187 Cal.App.4th 1040, 1061 [statute requiring letting of contracts by competitive bidding is mandatory and contract made without compliance is void and unenforceable as in excess of the agency's power].) Thus, " 'when by statute the power of the board or municipality to make a contract is limited to a certain prescribed method of doing so and any other method of doing it is expressly or impliedly prohibited, no implied liability can arise for benefits received under a contract made in violation of the particular[ly] prescribed statutory mode. Under such circumstances the express contract attempted to be made is not invalid merely by reason of some irregularity or some invalidity in the exercise of a general power to contract, but the contract is void because the statute prescribes the only method in which a valid contract can be made, and the adoption of the prescribed mode is a jurisdictional prerequisite to the exercise of the power to contract at all and can be exercised in no other manner so as to incur any liability on the part of the municipality. Where the statute prescribes the only mode by which the power to contract shall be exercised the *mode* is the *measure* of the power. A

_____

Drinkwater under procedures specified by an ordinance adopted by County's Board of Supervisors.

contract made otherwise than as so prescribed is not binding or obligatory as a contract . . . .' [Quoting *Reams v. Cooley* (1915) 171 Cal. 150, 153-154.]" (*Santa Monica Unified Sch. Dist. v. Persh* (1970) 5 Cal.App.3d 945, 953-954.)

Airline argues, for the first time on appeal, that the AUP was *not* a lease subject to the provisions of sections 25526 and 25530. Airline argues airport "use permits" are different from "leases" (citing *City & County of San Francisco v. Western Air Lines, Inc.* (1962) 204 Cal.App.2d 105) and asserts that, because the terms of sections 25526 and 25530 apply only to "leases" and do not mention "permits," those sections have no application to the AUP. We are not persuaded by Airline's arguments. First, Airline admitted, in response to an interrogatory propounded by County during discovery, that the 2012 AUP *was* a lease.[6] Ordinarily, an admission during discovery is properly utilized in granting summary judgment against the answering party (see, e.g., *Gordon v. Superior Court* (1984) 161 Cal.App.3d 157, 166 ["answers to interrogatories . . . [citations] may be treated as admissions against the answering party in granting a motion for summary judgment"]) and Airline has raised no argument it should be relieved of its

---

[6]     County propounded an interrogatory asking whether Airline "contend[s] that the [2012 AUP] is a lease?" and Airline responded (subject only to the objection that the question violated attorney client and attorney work product privileges), "Yes." This interrogatory was proper (*Burke v. Superior Court* (1969) 71 Cal.2d 276, 281-283), and Airline made no effort below, and raises no persuasive argument on appeal, to explain why its objections should have been sustained to bar use of this answer when examining and ruling on County's summary judgment motion. (See, e.g., *Universal Underwriters Ins. Co. v. Superior Court* (1967) 250 Cal.App.2d 722, 728 ["an interrogatory calling on one's adversary to state whether or not he makes a particular contention, either as to the facts or as to the possible issues in the case, is not only proper but desirable. The contention of an adversary which relates to its claim or defense is certainly a 'matter, not privileged . . . .' "].)

11

admission.  Moreover, in opposing County's motion for summary judgment, Airline did not dispute the 2012 AUP *was* a lease subject to the requirements of sections 25526 and 25530, but instead contended only that County should be equitably or judicially *estopped* from relying on noncompliance with those sections to avoid liability.  Ordinarily, a concession bars an appellant from raising the contrary claim on appeal.  (See, e.g., *Masters v. San Bernardino County Employees Retirement Assn.* (1995) 32 Cal.App.4th 30, 50-51.)

However, even had Airline preserved the argument below, we are not persuaded by its claim that the 2012 AUP was not a lease subject to the requirements of sections 25526 and 25530.  Although entitled "Permit," it is the character of the agreement, not the title of the document, that controls whether the AUP is a "lease."  (See, e.g., *Mattson v. County of Contra Costa* (1968) 258 Cal.App.2d 205, 207 [although agreement referred to respondents as "concessionaires" and did not use the words "lessees" or "tenants," "the descriptive words used are not controlling"]; *Bill Froehlich Motor Co. v. Estate of Kohler* (1966) 240 Cal.App.2d 897, 898 [court noted a document entitled "special use permit" was "in effect a lease of the land upon which the house and improvements are located"].)  Here, the AUP granted Airline the right to occupy certain office spaces, counter spaces, and employee parking spaces at Airport in exchange for a set monthly fee, and also granted Airline the right to use certain common areas (the runways, taxiways, ramps and passenger loading areas) for a variable monthly fee based on usage, and barred any assignment by Airline of its rights under the AUP.  Under similar circumstances, the courts have concluded a contract containing provisions and terminology analogous to

12

those contained in the AUP was a lease (see, e.g., *Beckett v. City of Paris Dry Goods Co.* (1939) 14 Cal.2d 633, 636-637), and Airline cites no pertinent authority suggesting a grant of the right to use County's real property employing similar language is not a "lease" within the meaning of sections 25526 and 25530. Instead, Airline cites only *City & County of San Francisco v. Western Air Lines, Inc., supra,* 204 Cal.App.2d 105 for the proposition that an airport use permit is not a lease. However, in *Western Air Lines,* the central issue was whether the owners of the airport could lawfully distinguish among the different airlines operating out of the facility by charging some airlines a lower rate for the common use facilities (because they held long-term leases that froze the rate at the lower amount) than it charged to Western Air Lines (operating under a revocable permit issued by the City that did *not* freeze the rate it would pay for using the common use facilities). (*Id*. at pp. 111, 134.) The *Western Air Lines* court had no occasion to address whether the permit issued by City to the plaintiff was subject to sections 25526 and 25530, and it did not hold a "permit" to use the airport cannot be a "lease" for purposes of sections 25526 and 25530. *Western Air Lines* is irrelevant to whether the 2012 AUP was a "lease" subject to the procedural requirements of sections 25526 and 25530.

Although we conclude the 2012 AUP was a "lease" subject to the procedural requirements of sections 25526 and 25530, we alternatively conclude that, even if the 2012 AUP was *not* a "lease" within the meaning of (and subject to) the requirements of those sections, it would still have been void as against County. "A county may exercise its powers only through the board of supervisors *or through agents and officers acting under authority of the board or authority conferred by law*" (§ 23005), and "[a]ny

13

contract . . . made or attempted to be made in violation of [law] is void, and shall not be the foundation or basis of a claim against the treasury of any county." (§ 23006.) County submitted evidence below, without objection by Airline, that at the time the 2012 AUP was issued, County's Board of Supervisors had adopted a use control policy for County's airports that provided certain permits could be issued without approval of the Board of Supervisors if they were (1) "issued by the Director of Transportation" (2) involved "activities specified in Section 5 of this Part VII" and (3) involved "fees not exceeding $1,000 per month." The use control policy *also* specified that "[p]ermits which the Director of Transportation is not authorized to issue pursuant to [this section] shall require approval by the Board of Supervisors." The 2012 AUP satisfied none of the requirements for permits issuable without approval by County's Board of Supervisors.[7] Even if the 2012 AUP was a "permit" rather than a "lease" within the meaning of sections 25526 and 25530, it would *still* have required approval of County's Board of Supervisors, and the absence of approval rendered the 2012 AUP void. (See *Bear River etc. Corp. v. County of Placer* (1953) 118 Cal.App.2d 684, 690 [where statutory scheme shows government employee had no power to enter into the contract without approval of Board of Supervisors, contract is void and county not bound]; accord, *Frandzen v. County of San Diego* (1894) 101 Cal. 317, 319-322.)

---

7    There are 14 permissible "activities" for which a permit could be issued without approval of the Board of Supervisors, *none* of which encompassed Airline's activities. Moreover, the monthly fees paid by Airline *exceeded* the $1,000 per month ceiling under the use control policy. Finally, the 2012 AUP was *not* signed by the Director of Transportation.

Airline appears to argue sections 25526 and 25530 cannot apply to the AUP because the purpose of those sections—to protect the public from corrupt public officials by mandating competitive bidding in the sale or lease of public property—does not and cannot apply to the AUP. Airline's argument for why the policy purpose *does not* apply here is that, because lease rates for the use of runways, taxiways, ramps and passenger loading areas are already set under a schedule of rates and charges adopted by County, any need to engage in competitive bidding is moot. However, this argument ignores that (1) the rates charged for every other aspect of the AUP (i.e. rental rates charged for the two check-in counters, three offices and six reserved employee parking spaces, and charges for overnight parking of aircraft) are *not* set by a schedule of rates and charges adopted by County, and (2) the AUP specifically declared the landing fees under the AUP are "set independently of the Schedule of Rates and Charges and Use Control Policy of the County of San Diego Airports . . . ."

Airline's argument for why sections 25526 and 25530 *cannot* apply to the AUP is that federal law mandates free access to public airports for qualified airline companies. From this predicate, Airline contends principles of preemption preclude application of state law that would impede an airline's free access to airport facilities by requiring a prospective airline company to competitively bid for contracts to use the facilities, and therefore sections 25526 and 25530 *cannot* be applied to the 2012 AUP. However, Airline cites no authority for the proposition that competitive bidding necessarily conflicts with the federal regulatory scheme governing access to airports (see, e.g., *Viva! Intern. Voice for Animals v. Adidas Promotional Retail Operations, Inc.* (2007) 41

15

Cal.4th 929, 936 [noting four types of preemption and cautioning courts " ' "are reluctant to infer preemption, and it is the burden of the party claiming that Congress intended to preempt state law to prove it" ' "]), and FAA decisions suggest competitive bidding *is* compatible with the federal scheme. (Cf. *Aerodynamics of Reading, Inc. v. Reading Regional Airport Authority* (2001) 2001 WL 1085346, at p. *10 [complainant alleged airport authority "awarded a lease for an available hangar to a competing FBO *without providing any other FBO the opportunity to bid on that hangar.* [Citation.] *This allegation could be construed as a violation of grant assurance 23*.].) We are unpersuaded Airline has demonstrated application of sections 25526 and 25530 to the 2012 AUP is preempted by federal law.

 C. The Trial Court Correctly Entered Summary Judgment on Airline's Common Count

 Airline argues that, once the trial court concluded the 2012 AUP (and its predecessor AUP's) were void, it was necessarily entitled to maintain its common count (seeking to recover all monies paid to County under the AUP's) and therefore it was improper to grant summary judgment in favor of County on that count. However, Airline's common count, which is a claim for money "had and received" (*Philpott v. Superior Court* (1934) 1 Cal.2d 512, 518), has been described as an " ' "equitable action to recover back money, which ought not in justice to be kept . . . . It lies only for money which . . . the defendant ought to refund; it does not lie for money paid by the plaintiff, which is claimed of him as payable in point of honor and honesty, although it could not have been recovered from him by any course of law; as in payment of a debt barred by

16

the statute of limitations, or contracted during his infancy, or to the extent of principal and legal interest upon a usurious contract, or, for money fairly lost at play: because in all these cases, the defendant may retain it with a safe conscience, though by positive law he was barred from recovering. . . .  In one word the gist of this kind of action is, that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money." ' "  (*H. Russell Taylor's Fire Prevention Service, Inc. v. Coca Cola Bottling Corp.* (1979) 99 Cal.App.3d 711, 718 [quoting *Moses v. Macfarlan* (2 Burr. 1005, English Reports, Full Reprint, King's Bench Book 26, vol. 97, p. 676)].) The claim is in the nature of an equitable action and rests on an obligation "created by law, or by legal fiction, that where the defendant has money which in equity and good conscience he ought to pay to the plaintiff he is deemed to have promised to pay it." (*Firpo v. Pacific Mut. Life Ins. Co.* (1926) 80 Cal.App. 122, 125.)

Ordinarily, when a contract is void as against a governmental entity because it was entered into in violation of state law, the plaintiff is prohibited from recovering under the contract for the work or materials provided, and may not avoid that prohibition by pleading a common count seeking to enforce an implied-in-law obligation.  (See *Katsura v. City of San Buenaventura* (2007) 155 Cal.App.4th 104, 111; *Reams v. Cooley, supra,* 171 Cal. at p. 153 ["no implied liability can arise for benefits received under a contract made in violation of the particularly prescribed statutory mode"].)  Airline argues those authorities may correctly hold a plaintiff may not by a common count recover the value of goods or services provided to the government under an invalid contract, but asserts those cases are irrelevant to whether payments to the government under a void contract

17

may be recovered under a common count for money "had and received."  We are not confronted with, and express no opinion on, whether a common count for money "had and received" could be pursued by a person who paid in advance for goods or services from the government and the government, although disclaiming any obligation to provide the contracted-for goods or services on the grounds the contract was void, nevertheless refused to refund the advance payments.  Instead, it appears to be undisputed that *Airline received what it paid for*: the right to use of certain office space, counter space and employee parking spaces at Airport over the years 2010 through 2012.[8]  Because the only evidence in this record is that the amounts paid by Airline to County were for the agreed monthly rates for rental of the office space, counter space and employee parking spaces, and Airline actually received the beneficial use of those spaces, there is no triable issue of fact that "[County] has money which in equity and good conscience [it] ought to pay to [Airline]. . . ."  (*Firpo v. Pacific Mut. Life Ins. Co., supra,* 80 Cal.App. at p. 125), and therefore the trial court correctly entered summary judgment against Airline on its common count.

---

[8]     For this reason, Airline's reliance on *Philpott v. Superior Court, supra,* 1 Cal.2d 512, 518 and *Schultz v. Harney* (1994) 27 Cal.App.4th 1611 is inapposite.  In *Philpott,* the court held a plaintiff could maintain a common count for money had and received when he alleged he had paid in advance for, but never received, certain stock.  (*Philpott,* at pp. 516-517.)  Unlike *Philpott*, Airline *did* receive what it paid for.  In *Schultz,* the court merely held that when an attorney collected a contingency fee under a contingency fee contract that was void because it provided for payment of a percentage fee that exceeded the statutorily prescribed limitation, the client properly stated a claim against the attorney for money had and received for that excess.  (*Schultz,* at p. 1623 ["Because the contingent fee agreement . . . was void for illegality (*to the extent it violated the* [*statutory limitations*]*), the facts alleged . . . effectively state a cause of action for money had and received.*"].)  Unlike *Schultz*, there was no evidence County received payments in excess of the value of what it provided to Airline.

## DISPOSITION

The judgment is affirmed.  County is entitled to costs on appeal.


                                                              McDONALD, J.

WE CONCUR:


HUFFMAN, Acting P. J.


AARON, J.